**UNITED STATES, Appellee,**

v.

**Luis Angel TORRES–OTERO, a/k/a El Enamo, a/k/a Little Luis, a/k/a Primo, Defendant, Appellant,**

Luis A. Torres–Otero, Plaintiff,
Appellant,

v.

United States, Defendant, Appellee.

Nos. 98–1832, 98–2012.

United States Court of Appeals,
First Circuit.

Heard April 9, 2000.

Decided Nov. 14, 2000.

Peter Goldberger, with whom Pamela A. Wilk was on brief, for appellant.

Grace Chung Becker, Trial Attorney, United States Department of Justice, on brief for appellee.

Before STAHL, Circuit Judge, BOWNES, Senior Circuit Judge, and LIPEZ, Circuit Judge.

STAHL, Circuit Judge.

Before us are two separate appeals. In the first, Luis Angel Torres–Otero appeals a district court order directing, as a remedy under 28 U.S.C. § 2255, the issuance of an out-of-time notice of appeal from his original criminal conviction. The district court ordered this relief to rectify its failure to advise Torres–Otero at sentencing that he had a right to appeal his sentence. Torres–Otero contends that the district court's reinstatement of the right wrongfully denied him at sentencing the right to pursue a timely appeal is not enough, and that he is entitled instead to vacatur of his sentence and de novo resentencing. For the reasons stated below, we do not agree,

and thus affirm the district court's § 2255 order. We then reach his direct criminal appeal, the second appeal before us by virtue of the district court's order, and rule that the district court did not improperly impose a fine on Torres–Otero at sentencing. We therefore affirm the criminal judgment imposed by the district court.

## I. Background

In July 1992, Torres–Otero pled guilty to conspiracy to possess heroin with intent to distribute, see 21 U.S.C. §§ 841(a)(1), 846, and participation in monetary transactions in criminally derived property, see 18 U.S.C. § 1957. The district court sentenced him to 168 months in prison, five years' supervised release, and a $25,000 fine. The court failed, however, to apprise him of his right to appeal his sentence, as was required under Fed.R.Crim.P. 32(a)(2).[1] Torres–Otero did not file a direct appeal from the guilty plea.

On August 13, 1996, Torres–Otero filed a pro se § 2255 motion, claiming that the district court's imposition of the $25,000 fine violated the Eighth Amendment and that his lawyer had provided constitutionally ineffective assistance in failing to object to the district court's Rule 32(a)(2) error. The district court summarily denied this motion and Torres–Otero did not appeal. Eight months later Torres–Otero, this time represented by counsel, filed a motion requesting leave to file a second § 2255 motion on the same ground as that advanced in the first motion. The district court denied the motion for lack of jurisdiction because, under the Antiterrorism and Effective Death Penalty Act, Pub.L. 104–132, 110 Stat. 1214 (Apr. 24, 1996) (AEDPA), permission to file a second or successive § 2255 motion must be sought

and obtained from the court of appeals, see 28 U.S.C. § 2244(b)(3)(A), and Torres–Otero had not received such authorization.

Nine months later, on January 26, 1998, Torres–Otero moved the district court for relief from the order and judgment entered in the first § 2255 action. This motion, styled as a motion for reconsideration under Federal Rule of Civil Procedure 60(b) or, alternatively, as a writ of coram nobis under the All–Writs Act, see 28 U.S.C. § 1651, squarely focused for the first time on the court's failure to inform him of his right to appeal his sentence. Torres–Otero noted that the issue had been indirectly raised in his first § 2255 motion but had been couched in the context of a Sixth Amendment claim,[2] and argued that the district court's failure to consider its own error in denying the original § 2255 motion warranted reconsideration of the matter. Rather than asking for the opportunity to pursue an out-of-time appeal, however, Torres–Otero requested vacatur of his original sentence and a full resentencing proceeding. The government opposed all relief.

Determining that it had no power to award relief under Rule 60(b), the court found nonetheless that Torres–Otero had met the "exacting standard" for issuance of a writ of coram nobis. Accordingly, the district court granted Torres–Otero's motion for relief from judgment, reasoning that it had erred six years earlier in neglecting to inform Torres–Otero of his right to appeal. Turning to the issue of the most appropriate remedy for its earlier error, the district court denied Torres–Otero's request that it vacate his sentence and resentence him afresh. Instead, the district court directed that a notice of ap-

---

**1.** The pertinent language of the Rule, which now appears in similar form in Rule 32(c)(5), read: "There shall be no duty on the court to advise the defendant of any right to appeal after sentence is imposed following a plea of guilty or nolo contendere, except that the court shall advise the defendant of any right to appeal the sentence."

**2.** Specifically, Torres–Otero's first § 2255 motion identified counsel's "failure to object to the Court['s] failure to advise him of his right to appeal, a Rule 32 violation," as constituting ineffective assistance of counsel.

peal be filed on Torres–Otero's behalf. It explained its reasoning as follows:

> First, the only defect of which Torres–Otero complains in his motion is the Court's failure to notify him of his right to appeal. The order to file a notice of appeal is the simplest and quickest way to correct this defect. Torres–Otero complains that he was denied his right to appeal. An order that a notice of appeal be filed will immediately reinstate this right.
>
> Additionally, in this motion he does not challenge other elements of his sentence, and the Court finds nothing in the record constituting error, other than the failure to advise Torres–Otero of his right to appeal. A full resentencing with its concomitant expenditures of time and money which would impose the same sentence and which would be held merely for the purpose of allowing the Court to go through the formal process of advising Torres–Otero of his right to appeal would therefore be an "empty exercise." The Court finds that the same ends may be achieved more expeditiously and more inexpensively by ordering that a notice of appeal be filed. A resentencing is therefore unnecessary.

D. Ct. Op. at 4–5 (internal citations omitted).

The government initially appealed this order, then apparently thought better of it and dismissed its appeal. Torres–Otero, meanwhile, pursued his own appeal, assigning error to the district court's decision not to begin the sentencing process anew.[3] Four business days before this court was to hear oral argument on Torres–Otero's appeal, the government moved to dismiss for lack of subject-matter juris- diction. The motion asked us to treat Torres–Otero's motion for reconsideration as an unauthorized successive § 2255 motion. We declined to do so, instead construing the order in question as a "final decision on Torres's first § 2255 motion, albeit a decision issued as a result of a motion to reconsider." *United States v. Torres–Otero,* 192 F.3d 12, 13 (1st Cir. 1999) (per curiam).[4] Following *Peguero v. United States,* 526 U.S. 23, 29–30, 119 S.Ct. 961, 143 L.Ed.2d 18 (1999), in which the Supreme Court held that Rule 32(a)(2) errors are harmless where the defendant had independent knowledge of his right to appeal, we then remanded the case to the district court for a factual hearing on whether Torres–Otero did, in fact, know he had a right to appeal, notwithstanding the district court's failure to tell him so. *See Torres–Otero,* 192 F.3d at 14.

At the post-remand hearing, Torres–Otero testified that he had no independent knowledge of his right to appeal, and his trial attorney testified that she could not recall advising him of that right. The government offered no evidence to the contrary. Accordingly, the district court found that reversible error had been committed at sentencing and returned the case to us to consider the remaining issues.

## II. Jusisdiction

As an initial matter, Torres–Otero claims that we lack jurisdiction over his direct criminal appeal because, when the district court ordered the issuance of the notice of appeal as a § 2255 remedy, it failed to vacate the judgment from his criminal conviction and enter a new one. The upshot, according to Torres–Otero, is that the appeal is untimely because it was

---

**3.** Before the briefs were filed in this court, the government moved to dismiss Torres–Otero's appeal on the ground that Torres–Otero is a prevailing party and therefore has nothing to appeal. Torres–Otero disagreed, stating that he only partially prevailed because the relief he requested (vacatur and resentencing) was denied. The government's motion to dismiss was denied without prejudice to the panel's reconsideration after briefing and argument. We adhere to that denial now.

**4.** Given this earlier holding, which now represents the law of the case, we must consider the propriety of the district court's order as a § 2255 remedy, rather than as a remedy for a writ of *coram nobis.*

not taken within ten days of entry of judgment. *See* Fed. R.App. P. 4(b)(1)(A).

It is true that no such judgment was entered; as mentioned above, the 1996 memorandum and order merely instructed the Clerk to file a notice of appeal on Torres–Otero's behalf. And it is also true that the notice of appeal must be deemed untimely if it was taken from the 1992 sentencing judgment. Given the substance of the district court's remarks in the memorandum and order regarding restoration of Torres–Otero's right to appeal, however, we think it fair to infer that the district court intended to follow the "standard practice among federal courts" in this situation: vacatur of the sentence and summary imposition of a new sentencing judgment identical in all respects to the earlier one except for the date of entry. *Pratt v. United States*, 129 F.3d 54, 62 (1st Cir.1997). In contrast, a narrow reading of the order the one Torres–Otero urges upon us would lead to the conclusion that the district court ordered a remedy that it was powerless to impose. There is no practical reason to engage in such myopic formalism.

Of course, apart from construing what the district court meant to do in this case, the fact remains that no independent sentencing judgment was entered in Torres–Otero's direct criminal appeal (No. 98–1832). Given the nature of the district court's order, it is certainly understandable that the Clerk's Office for the District of Puerto Rico never actually performed the ministerial act of vacating the old sentencing judgment and replacing it with a judgment identical in all respects save the date of entry. The effect of the district court's order, however, is identical to the one that is brought about by the more formal approach prescribed in *Pratt*. In the analogous context of timely appeals taken from orders never reduced to a separate final judgment, as Fed.R.Civ.P. 58 requires, we have rejected the proposition that appellate jurisdiction necessarily depends on the ministerial entry of a separate judgment. *See Southworth Machinery Co. v. F/V Corey Pride*, 994 F.2d 37, 39 (1st Cir.1993) (holding "separate document" rule does not defeat appellate jurisdiction where a timely appeal is noted and the parties are not prejudiced by the absence of a separate document); *Fiore v. Washington County Community Mental Health Ctr.*, 960 F.2d 229, 236 n. 10 (1st Cir.1992) (en banc) (same); *see also Bankers Trust Co. v. Mallis*, 435 U.S. 381, 385, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978) (per curiam) ("If, by error, a separate judgment is not filed before a party appeals, nothing but delay would flow from requiring the court of appeals to dismiss the appeal."). Requiring the entry of a separate judgment in this instance would be unnecessarily formalistic, although certainly not undesirable.

Furthermore, in light of our holding in Part III, *infra*, that the district court acted within its discretion in denying Torres–Otero a full resentencing as a § 2255 remedy, a remand to the district court for vacatur of the sentence and summary reimposition of that sentence would provide no discernible benefit to Torres–Otero. *Cf. Jusino v. Zayas*, 875 F.2d 986, 990 (1st Cir.1989) ("In this idiocratic posture, it would be idle to force the parties round and round the mulberry bush for no better reason than ceremonial punctiliousness."). We thus turn to the merits of each of Torres–Otero's two sentencing appeals.

### III. Propriety of Relief under § 2255

In appeal number 98–2012, Torres–Otero contends that the district court committed reversible error by declining to order vacatur of his original sentence and *de novo* resentencing. If he is right, our discussion in Part II would be largely academic, since the conclusion that we *may* consider the direct criminal appeal as a jurisdictional matter would take a back seat to the issue of whether we *should* consider it as a remedy under § 2255. We review the district court's determination of the appropriate remedy for a § 2255 viola-

tion for abuse of discretion. *See United States v. Gordon*, 156 F.3d 376, 381 (2d Cir.1998).

■ Torres–Otero's principal argument as to the district court's chosen remedy hinges on the meaning of § 2255, which, in relevant part, reads:

> If the court finds that the ... sentence imposed was not authorized by law or otherwise open to collateral attack, ... the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

28 U.S.C. § 2255 (unnumbered ¶ 2).

■ Torres–Otero asserts that when the district court finds a defect in a criminal judgment, its options for remedying that defect under § 2255 are limited, and that by authorizing a direct appeal in this case, the district court ventured outside the domain of permissible choices. In making this argument, Torres–Otero correctly notes that, in cases where the sentence (but not the conviction) is infirm, only the "resentenc[ing]" or "correct[ing] the sentence" options are open to the district court, since a prisoner should never be "discharge[d]" or "grant[ed] a new trial" based solely on a defective sentence. Going one step further, Torres–Otero asserts, without elaboration, that "correct[ion of] the sentence was not an option" to the district court in this case. Consequently, he argues, there was only one choice available to the district court: a full resentencing following vacatur of the original sentence.[5]

Although Torres–Otero's argument has superficial appeal, we cannot accept its underlying premise that the district court was obliged to order a full resentencing after acknowledging its Rule 32 violation. As an initial matter, we note the broad leeway traditionally afforded district courts in the exercise of their § 2255 authority. "The § 2255 remedy is broad and flexible, and entrusts to the courts the power to fashion an appropriate remedy." *United States v. Garcia*, 956 F.2d 41, 45 (4th Cir.1992) (citing *Andrews v. United States*, 373 U.S. 334, 339, 83 S.Ct. 1236, 10 L.Ed.2d 383 (1963)). This is so because a district court's power under § 2255 "is derived from the equitable nature of habeas corpus relief." *United States v. Handa*, 122 F.3d 690, 691 (9th Cir.1997) (internal citations omitted); *see also Schlup v. Delo*, 513 U.S. 298, 319, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995) ("[H]abeas corpus is, at its core, an equitable remedy.").

Moreover, and more to the point, we are of the opinion that the district court's order was an appropriate "correct[ion]" of Torres–Otero's sentence. As we have previously noted, the grant of authority to "correct the sentence as may appear appropriate" that appears in § 2255 "expressly vests some power in the district court." *United States v. Rodriguez*, 112 F.3d 26, 29 (1st Cir.1997). The district court's failure to advise Torres–Otero of his right to appeal constituted an error in the sentencing proceeding; his cause of action therefore arises under § 2255 solely because the original *sentence* is subject to collateral attack. The district court chose to remedy this defect in the sentence by allowing Torres–Otero to pursue his direct

---

**5.** In a footnote in his brief, Torres–Otero makes an oblique reference to his apparent motivation for obtaining this result: the requirement that the district court conduct such a proceeding under present law and with an eye to present circumstances. *See* U.S.S.G. § 1B1.11(a). For example, Torres–Otero may wish to assert an entitlement to sentencing under certain "safety-valve" provisions that have been adopted since his 1992 conviction. *See, e.g.,* U.S.S.G. § 5C1.2 (limiting applica-

bility of statutory mandatory minimum sentence in certain drug cases); *id.* § 2D1.1(b)(6) (reducing base offense level under Guidelines if § 5C1.2 satisfied). So too might he wish to argue for a downward departure on the basis of post-conviction rehabilitative conduct. *See, e.g., United States v. Bradstreet*, 207 F.3d 76, 82–83 (1st Cir.2000) (holding that district court may consider post-conviction rehabilitation at resentencing following vacatur of initial sentence).

appeal. Putting aside the allure of its logical symmetry, we find this approach to be within the equitable discretion of a district court acting to "correct the sentence as may appear appropriate." *Cf. United States v. Hillary,* 106 F.3d 1170, 1172 (4th Cir.1997) ("Certainly the most 'appropriate' remedy is to put § 2255 defendants in the same boat as direct appellants....").[6]

Torres–Otero invokes *Rodriquez v. United States,* 395 U.S. 327, 89 S.Ct. 1715, 23 L.Ed.2d 340 (1969), and *Bonneau v. United States,* 961 F.2d 17 (1st Cir.1992), in an attempt to cast doubt on the permissibility of the district court's order. His reliance on these cases, however, is misplaced, as neither case considered whether a *de novo* resentencing is required in a situation such as this. Indeed, in those courts that have actually considered the issue, there appears to be uniform agreement that *de novo* resentencing is not required. For example, in *United States v. Prado,* 204 F.3d 843 (8th Cir.2000), the petitioner raised the deprivation of his right to appeal in the context of an ineffective assistance of counsel claim. The district court granted § 2255 relief by vacating the petitioner's original sentence and reimposing the same sentence to permit the filing of an appeal. Dissatisfied with this remedy, the petitioner appealed the district court's § 2255 order as well as his sentence. *Id.* at 845. The Eighth Circuit rejected petitioner's claim of entitlement to *de novo* resentencing, including preparation of a presentence report and the opportunity to be heard on sentencing issues, after vacatur of his initial sentence: "[T]he prescribed procedure is for the district court to vacate the sentence and then reimpose it, allowing the defendant ten days to appeal from the imposition of the

new sentence." *Id.* (citing *United States v. Beers,* 76 F.3d 204, 205 (8th Cir.1996) (per curiam)).

Likewise, in *United States v. Phillips,* 225 F.3d 1198 (11th Cir.2000), the Eleventh Circuit, on facts similar to the ones before us, endorsed the granting of an out-of-time appeal as a § 2255 remedy. *Phillips* involved a petitioner who had not been advised by either the court or his lawyer of his right to appeal. Four years after being sentenced, he filed a § 2255 motion on this basis. The district court granted his motion and awarded an out-of-time appeal as the remedy. *Id.* at 1199. The Eleventh Circuit found that Congress wrote § 2255 in such a way as to permit district courts to authorize vacatur of sentence and summary reimposition of those sentences, and noted the intrinsic soundness of the approach taken by the district court: "[V]acating a sentence and resentencing a defendant are remedies authorized by § 2255, and by using them a court can give a defendant access to the right that was previously and wrongfully denied the right to appeal the sentence." *Id.* at 1200–01. It then outlined the approach to be followed by district courts in this circumstance:

> When the district courts ... conclude that an out-of-time appeal in a criminal case is warranted as the remedy in a § 2255 proceeding, they should effect the remedy in the following way: (1) the criminal judgment from which the out-of-time appeal is to be permitted should be vacated; (2) the same sentence should then be reimposed; (3) upon reimposition of that sentence, the defendant should be advised of all the rights associated with an appeal from any

6. In so stating, we think it crucial to emphasize that the only error committed by the district court was that of failing to follow a prescribed procedure that, for obvious reasons, must occur during the sentencing hearing. The error, in other words, in no way implicates the *substantive* lawfulness of Torres–Otero's sentence. Torres-Otero is thus situated quite differently from a defendant who, on direct appeal or in a collateral proceeding, convinces a court that his sentence is unlawful *on the merits* and thereby earns *de novo* resentencing under current law. *Compare* note 5, *supra.* Simply put, there is no reason to vacate Torres–Otero's sentence on the merits and order a full resentencing unless and until we determine that the sentence is substantively defective.

criminal sentence; and (4) the defendant should also be advised that the time for filing a notice of appeal from that re-imposed sentence is ten days, which is dictated by [Federal] Rule [of Appellate Procedure] 4(b)(1)(A)(i).

*Id.* at 1201.

■ We agree with the Eighth and Eleventh Circuits and hold that, in cases where the defendant is awarded an out-of-time appeal as a § 2255 remedy for either a Rule 32 or Sixth Amendment violation, the district court is not required to engage in *de novo* resentencing, but may instead vacate the initial sentence and summarily reimpose a sentencing judgment identical in all respects to the earlier judgment except for the date of entry.

### IV. Imposition of the Fine

■ Torres–Otero's direct criminal appeal, to which we now turn, challenges the procedure by which the district court levied a $25,000 fine at sentencing. We review the imposition of fines under the Sentencing Guidelines for abuse of discretion. *See United States v. Savoie,* 985 F.2d 612, 620 (1st Cir.1993).

■ Torres–Otero claims that the district court failed to fulfill its duty under Fed.R.Crim.P. 32(c)(3)(D)[7] to settle disputes surrounding all facts relevant to his ability to pay the fine. In his sentencing memorandum, Torres–Otero had challenged the finding in the presentence report (PSR) that, despite extensive seizures already visited upon him by the government, he had the ability to pay a fine from either remaining assets or possible hidden drug proceeds. He contends that, based on the bare facts regarding his financial condition contained in the PSR, he has done all that is necessary to establish his inability to pay, notwithstanding the contrary factual conclusion reached by the probation officer. Torres–Otero also contends that "the obligation to resolve factual sentencing disputes was essentially ignored [by the district court] in this case."

■ We find these arguments to be without merit. Torres–Otero does not dispute the basic proposition that "[t]he defendant bears the burden of demonstrating that his . . . case warrants an exception to the rule that a fine be imposed." *United States v. Cunan,* 152 F.3d 29, 37 (1st Cir. 1998) (quoting *United States v. Peppe,* 80 F.3d 19, 22 (1st Cir.1996)); *see also* U.S.S.G. § 5E1.2(a) ("The court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine."). And by his own admission he offered no affirmative evidence to prove that he could not pay. Instead, he merely takes umbrage with the probation officer's *factual* conclusion that he could pay the fine a conclusion he considers unsupportable in light of the numerous seizures documented in the PSR. We have noted before, however, that evidence in the record that a defendant has a zero or even negative net worth does not, by itself, preclude the imposition of a fine. *See Peppe,* 80 F.3d at 23.[8] And in cases where a defendant fails to rebut factual assertions in a PSR, the district court is justified in relying on those assertions. *See United States v. Grant,* 114 F.3d 323, 328 (1st Cir.1997) (citing *United States v. Mir,* 919 F.2d 940,

---

7. This requirement now appears in Fed. R.Crim.P. 32(c)(1).

8. While the PSR is less than crystal clear in enumerating the assets from which Torres–Otero might pay a fine, Torres–Otero is wrong to argue that it alleges *no* facts from which an ability to pay could be inferred. The PSR, for instance, notes that in the several years preceding Torres–Otero's trial, he reportedly earned a $1,000 monthly salary as a car sales-man in Orlando, Florida, as well as a $400 weekly income as the owner of an auto mechanic shop in Carolina, Puerto Rico. Torres–Otero, meanwhile, admits that his monthly expenses during the same period were approximately $1,200. This evidence is sufficient to defeat his assertion that he has met his burden of proving an inability to pay, particularly since he has offered no evidence to contradict it. *See Cunan,* 152 F.3d at 37.

943 (5th Cir.1990)); *United States v. Garcia*, 954 F.2d 12, 19 (1st Cir.1992) (holding reliance on facts in PSR lawful when defendant challenges interpretation of facts but not the facts themselves).[9]

▮ Torres–Otero's contention that the district court neglected to resolve adequately these factual disputes also fails. The record indicates that the district court referred to the PSR's findings regarding Torres–Otero's financial condition at the sentencing hearing, and expressly adopted those findings in issuing the judgment. As we have recently observed, under these facts "[t]he only logically inferable conclusion is that the court rejected ... appellant's fact-based challenge[ ] to the PSI Report." *United States v. Saxena*, 229 F.3d 1, 11 (1st Cir.2000) (quoting *Savoie*, 985 F.2d at 621).[10] On this record, the district court's conclusion was well within its discretion.

*Affirmed.*

---

9. Torres–Otero complains that this burden places him in a "Catch–22" because if he submits a financial statement to meet his burden, it will inevitably be considered "self-serving," whereas if he submits none, he is bound to lose. This argument ignores other cases where probation officers, in preparing a PSR, have expressly relied on a defendant's financial statement in determining an inability to pay. *See, e.g., United States v. Corace*, 146 F.3d 51, 57 (2d Cir.1998) (finding "significant corroboration" of defendant's inability to pay a fine was provided by his financial statement).

10. In a related argument, Torres–Otero claims that the district court ignored certain factors that it was required by statute to consider before imposing a fine, such as the effects such a fine would have on his wife and children. *See* 18 U.S.C. § 3572(a) (listing factors to be considered by district court). In our view, however, the PSR, which the district court explicitly adopted, discussed Torres–Otero's family situation and adequately addressed the burden of a fine on his wife and children. *See United States v. Merric*, 166 F.3d 406, 408 (1st Cir.1999) (citing *United States v. Wilfred Am. Educ. Corp.*, 953 F.2d 717, 719 (1st Cir.1992)) ("Where the pertinent information [regarding the propriety of a fine] is presented in the district court, this court will assume that the district court considered it."). We also observe that the district court, faced with a potential fine of $17,500 to $4,000,000, selected a fine close to the Guideline minimum. This determination provides additional proof that the district court did not simply select a punitive figure arbitrarily. *See Peppe*, 80 F.3d at 22–23.